VILLANTI, Judge.
Terrance Rogan, Valerie Rogan, and Ronald Kay (the Petitioners) petition this court to issue a writ of certiorari to quash the trial court’s order that denied their motion to compel the depositions of two attorneys who were formerly counsel to the Majors Homeowner’s Association. Because the trial court applied the incorrect law in determining whether the attorney/client privilege had been waived, we grant the petition and remand for further proceedings.
Respondent James Oliver sued the Petitioners for defamation under various theories of liability. According to Oliver — a past president of the Association — the Petitioners made written and oral statements accusing him of abusing his position when he was president and using Association funds for personal projects. Oliver alleged that these statements were false and injurious to his reputation in the community. The Petitioners raised the affirmative defense of truth.
During his deposition, Oliver testified that he relied on the advice of the Association’s prior counsel — attorneys Ashley Lupo and Gregory Marler — in determining whether certain actions taken by him and the others on the Association’s board of directors were authorized and proper. The Petitioners then sought to depose Lupo and Marler concerning the advice they gave the Association’s board members, including Oliver. Oliver objected, contending that the communications between the Association’s board and Lupo and Marler were protected by attorney/client privilege and asserting that neither he nor the prior board would waive that privilege. In addition, he argued that some of the communications were made to him in his individual capacity and so were protected by his attorney/client privilege. The Petitioners filed a motion to compel the depositions of Lupo and Marler, which the trial court denied. The Petitioners now ask this court to quash this order by way of a writ of certiorari.
The standard by which a petition for writ of certiorari is reviewed is quite narrow. A petitioner seeking a writ of common law certiorari “must establish (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the trial (3) that cannot be corrected on postjudgment appeal.” Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 648 (Fla. 2d DCA 1995). Elements two and three constitute a jurisdictional test, and “[i]f the jurisdictional prongs of the standard three-part test are not fulfilled, then the petition should be dismissed rather than denied.” Id. at 649.
Generally, certiorari jurisdiction exists to consider the denial of a motion to compel the deposition of a material witness. See Nucci v. Simmons, 20 So.3d 388, 390 (Fla. 2d DCA 2009). As this court explained:
“In circumstances involving the denial of the right to take testimony of an alleged material witness, it has been recognized that such a denial cannot be remedied on appeal since ‘there would be no practical way to determine after judgment what the testimony would be or how it would affect the result.’ ”
Id. (quoting Medero v. Fla. Power & Light Co., 658 So.2d 566, 567 (Fla. 3d DCA 1995)). A material witness is one “who possesses information ‘going to some fact affecting the merits of the cause and about which no other witness might testify.’ ” *983 Duran v. MFM Grp., Inc., 841 So.2d 500, 501 (Fla. 3d DCA 2003) (quoting Wingate v. Mach, 117 Fla. 104, 157 So. 421, 422 (1934)). Thus, the jurisdictional test in this type of case hinges on whether the indi-vidual sought to be deposed possesses information about which no other witness could properly testify.
Here, the Petitioners have asserted that Lupo and Marler are material witnesses because they, and only they, can testify as to what information and/or advice they gave the board of directors, including Oliver, concerning the propriety of the board’s actions. While Oliver argues that the management company employees could testify as to what they were told by Lupo and Marler, that testimony would constitute inadmissible hearsay. Thus, Lupo and Marler appear to be material witnesses in this case, and any error in the order prohibiting their depositions cannot be corrected on postjudgment appeal. Hence, we have jurisdiction to consider the merits of the petition.
Turning to those merits, it becomes apparent that the trial court departed from the essential requirements of the law by applying the incorrect law.
It is by now well established, and undisputed by the parties to this case, that the attorney-client privilege attaches to corporations as well as to individuals. Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Both for corporations and individuals, the attorney-client privilege serves the function of promoting full and frank communications between attorneys and their clients. It thereby encourages observance of the law and aids in the administration of justice. See, e.g., Upjohn Co. v. United States, supra, at 389, 101 S.Ct. at 682; Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980); Fisher v. United States, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).
The administration of the attorney-client privilege in the case of corporations, however, presents special problems. As an inanimate entity, a corporation must act through agents. A corporation cannot speak directly to its lawyers. Similarly, it cannot directly waive the privilege when disclosure is in its best interest. Each of these actions must necessarily be undertaken by individuals empowered to act on behalf of the corporation....
The parties in this case agree that, for solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation’s management and is normally exercised by its officers and directors. The managers, of course, must exercise the privilege in a manner consistent with their fiduciary duty to act in the best interests of the corporation and not of themselves as individuals. See, e.g., Dodge v. Ford Motor Co., 204 Mich. 459, 507, 170 N.W. 668, 684 (1919).
The parties also agree that when control of a corporation passes to new management, the authority to assert and waive the corporation’s attorney-client privilege passes as well. New managers installed as a result of a takeover, merger, loss of confidence by shareholders, or simply normal succession, may waive the attorney-client privilege with respect to communications made by former officers and directors. Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties.
Commodity Futures Trading Comm’n v. Weintraub, 471 U.S. 343, 348-49, 105 S.Ct. *984 1986, 85 L.Ed.2d 872 (1985) (emphasis added; footnotes omitted); see also Tail of the Pup, Inc. v. Webb, 528 So.2d 506, 507 (Fla. 2d DCA 1988) (noting same).
Here, the trial court departed from the essential requirements of the law by concluding that Oliver — a “displaced manager” — had the authority to waive or assert the attorney/client privilege on behalf of the Association. This ruling placed the authority at issue in the incorrect hands. It is the Association, through its current board of directors, which is the entity with the authority to waive or assert attorney/client privilege as to communications between the Association’s prior board and its counsel. To the extent that the trial court placed this authority with Oliver, it departed from the essential requirements of the law.[1]
Accordingly, because the trial court applied the incorrect law when deciding the merits of the Petitioners’ motion, we grant their petition, quash the order, and remand for further proceedings. On remand, the trial court must consider whether the current Association board members have waived the attorney/client privilege on behalf of the Association and, if so, whether that waiver was valid in light of the current composition of the board.
Petition granted.
WALLACE and MORRIS, JJ., Concur.

. We do not overlook Oliver’s contention that some of the communications between him and the Association’s counsel were made to him in his individual capacity; however, nothing in the record before this court supports this assertion. Nevertheless, on remand the trial court may revisit this issue to the extent that Oliver can identify any such alleged statements.